UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-CR-00223 |
| | : | |
| MATTHEW MARK WOOD, | : | |
| Defendant. | : | |

DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE

COMES NOW Kira Anne West, counsel for Mr. Matt Wood in the above captioned case, and moves for the suppression of certain oral and written statements and evidence in the above case and in support states the following:

I.   Procedural Background

On January 5th, 2021, Mr. Wood traveled to Washington, D.C. with a friend and his grandmother to attend a rally on January 6th, 2021, where Donald Trump was the featured speaker. They were late for the speech, had lunch instead, and eventually followed the crowd to the Capitol grounds, where he was sprayed with tear gas and flash bangs were going off all around him. He eventually went in thru the Senate

wing window, and milled around inside for approximately one hour. After this event, he made numerous statements on social media. After the event, he drove home, with his friend and Grandmother. He was later processed on a criminal complaint in the Middle District of North Carolina on March 5th, 2021. On March 11, 2021, he made his initial appearance before Magistrate Judge Faruqui and was released. *See* minute order, March 11, 2021 & ECF No. 12. In the six weeks preceding his appearance in this District, Mr. Wood was improperly induced to make certain statements to law enforcement. Defendant made these statements in the absence of counsel and without being mirandized. He was later indicted and charged with Obstruction of an official proceeding and aiding and abetting in violation of to 18 U.S.C. §1512(c)(2) & (2); Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority pursuant to 18 U.S.C. §1752(a)(1), (a)(2) (a)(4); Violent Entry and Disorderly Conduct on Capitol Grounds pursuant to 18 U.S.C. §5104(e)(2)(D) and(e)(2)(F). There was no search of his home. However, he allegedly voluntarily

consented to the search of his phone and provided law enforcement his password to it with the advice of counsel.

Mr. Wood moves to suppress all statements made by him to police officers. The basis for suppression is 1. Non-compliance with the requirements of warning of constitutional rights when Mr. Wood was in custody and waiver thereof preceding custodial questioning, and 2. the presence of a coercive atmosphere created by police custody and interrogation which resulted in undermining the privilege against compelled self-incrimination. He also challenges the taking and subsequent search of his cellular phone.

II.   Facts

On January 25th, Mr. Wood called the Charlotte FBI. Mr. Woods spoke freely to the FBI-once when he called them to report that he would speak to them and the next day when FBI Agent Finch and another agent came to his home to speak to him. Mr. Wood was told that the FBI was "looking for information."  Later, on January 25th, 2021, due to his activities on January 6, Mr. Wood voluntarily turned himself in when he found out that the FBI was looking for him. He worked with

them and answered all their questions without legal representation for 6 weeks. This is because in conversations with FBI agent Finch he was told he would not be arrested and Mr. Wood thought that the information he was giving would help them in other cases because the agent asked him about other people that were at the capitol on January 6, such as "Did Mr. Wood see anyone at the Capitol break anything? Steal anything?" and questions along those lines. Mr. Wood was never told there was an investigation of him, nor was he ever Mirandized. Agent Finch told Mr. Wood on January 26th in a phone call that he was not going to arrest him and there was no need to call his work because he was not going to be arrested, but only to give information. Weeks went by and Mr. Wood was contacted again by the FBI Agent Finch and asked to turn himself in because he was going to be charged with three charges. He did so on March 5th at the Winston-Salem Courthouse. He was told that he was at that time "formally under arrest." Before Mr. Wood was formally advised of his rights by the Magistrate Judge, Agent Finch asked him for his phone and Mr. Wood gave it to him and provided the password. He also signed a written consent. *See* Exhibit 1.

Mr. Wood also made statements at that time. Mr. Wood did not give this consent knowingly.

### III. Law: statements

The Supreme Court has determined that the Fifth and Fourteenth Amendment's prohibition against compelled self-incrimination requires that custodial interrogation be preceded by advice to the Defendant that he has the right to remain silent and the right to the presence of an attorney. *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). Miranda warnings are required before custodial interrogation begins. *Id*. at 444-45.  Before it can use any statements produced through custodial interrogation, the government has the burden to show that. "the defendant 'voluntarily, knowingly and intelligently' waived [these] rights." *J.D.B. v. North Carolina*, 564 U.S. 261, 269-70 (2011). A custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody *or otherwise deprived of his freedom of action in any significant way. Illinois v. Perkins*, 496 U.S. 292, 296 (1990)(emphasis added). To determine whether or not a person is in custody, one must examine the objective circumstances of

interrogation, not the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323, (1994). The Court must look to how a reasonable man in the suspect's position would have understood the situation. *Id., quoting Berkemer v. McCarty,* 468 U.S. 420, 442 (1984). Moreover, the Government must show the statements were obtained without coercion or improper inducement. *Colorado v. Connolly*, 479 U.S. 157 (1986).

Should a defendant make a statement, a court must examine the voluntariness of the particular statement and test whether the statement was freely given under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *see also, Malloy v. Hogan*, 378 U.S. 1, 6- 7 (1964) (the constitutional inquiry is not whether the conduct of the law enforcement officers in obtaining the confession was shocking, but whether the confession was free and voluntary); *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). The government bears the burden of proving by a preponderance of the evidence that a statement allegedly made by a defendant was voluntary, or fits into exceptions to

this general rule. *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *United States v. Garcia*, 780 F. Supp. 166, 171 (S.D.N.Y. 1991). However, Miranda does not apply "[i]f the defendant is not in custody … nor do[es][it] govern other non-interrogative types of interactions between the defendant and the State." *Montejo v. Louisiana*, 556 U.S. 778 (2009). Without a valid Miranda waiver, the police may not ask questions, even during booking, that are designed to elicit incriminatory admissions. *Pennsylvania v. Muniz,* 496 U.S. 582, 601-02 & n. 14. Accordingly, the questioning here by law enforcement officers did serve to elicit incriminatory admissions.   The government bears the burden to demonstrate a knowing and intelligent waiver of the privilege against self-incrimination when a defendant raises a colorable claim of coercion. *See Miranda* 384 U.S. at 475; 18 U.S.C. § 3501(b) (setting forth criteria for determining when a confession is "voluntary" or "coerced.") And when determining voluntariness of a statement, the "totality of the circumstances" must be examined, including the defendants individual characteristics and background, the

setting in which the statement occurred, and the details of the interrogation or interview. *United States v. Elie*, 111 F. 3d 1135, 1143-44, (4th Cir. 1997); *United States v. Pelton*, 835 F.2d 1067, 1071-72 (4th Cir. 1987). *Accord United States v. Van Metre*, 150 F 3d 339, 348-49 (4th Cir. 1998).

IV. Argument

1. "Hey, mind if we look at your phone?"

The government cannot meet its burden of showing that defendant's consent to search his phone was knowing and voluntary under the totality of the circumstances. Special Agent Finch began questioning the defendant immediately after his " formal arrest." They asked to look at his phone, asked for his consent to search phone, he signed the form, and Mr. Wood gave it to them. No warning was given before this. Critically, the form nor the agent indicated that his entire phone would be downloaded, commonly known as a "phone dump." Mr. Wood thought that they were going to only look at photos and videos of January 6. This consent was not voluntary, and if the Court

finds it was, it's only voluntary with regard to January 6 activieties and did not include anything outside that scope. See *Commonwealth v. Gallagher,* No. 1529 WDA 2019, 2021 PA Super 204 (2021) (en banc). Mr. Wood believed this because in a prior interview with Special Agent Finch, he told Mr. Wood that he would like to look at pictures and videos that Mr. Wood took on January 6th.  Mr. Wood offered them up at that time, but Special Agent Finch demurred and said maybe later. And during those two previous interviews with the FBI, Mr. Wood was never told he would be charged with a crime. In fact, Special Agent Finch told Mr. Wood he would let him know what his investigation revealed. Finally, the form is for computers, not telephones, and  here again, knowing it was not for a computer, Mr. Wood again did not consent. *See* consent form, Ex. 1.

2. <u>Statements after formal arrest</u>

Anything Mr. Wood said to the FBI before he entered the Winston Salem courthouse should be suppressed because he was told he was formally arrested yet never given a Miranda warning.  Therefore, any of those statements subsequent to his formal arrest should be suppressed.

3. <u>Cell phone search</u>

In the initial discovery received by defendant, there were indications that a cell phone data base search was conducted. A file called "Cell Phone Database Search Results" was made available to the defense. That document states that on 2/04/2021 an agent with the Federal Bureau of Investigation searched the "Transition 2021 – Capitol Devices splunk dataset containing data from search warrants from a Google geofence, AT&T tower dump, and Verizon tower dump" which resulted in information relating to defendant's cell phone. We have not been given these warrants. Discovery is ongoing and undersigned counsel conferred with counsel for the government who will be providing additional discovery. So as not to delay the motions deadline, undersigned counsel will supplement her motion to suppress where appropriate given additional discovery is forthcoming.

WHEREFORE, Defendant prays this Honorable Court will set this motion down for pretrial evidentiary hearing, order the government to have all agents and police officers involved in the case preserve their rough notes, and thereafter order suppression of evidence and statements.

Respectfully Submitted,

\_\_\_\_/s/_____

Kira Anne West, Esq.
DC Bar No. 993523
712 H. Street N.E., Unit 509
Washington, D.C.  20002
(202)-236-2042
kiraannewest@gmail.com
Attorney for Mr. Matthew Wood


Certificate of Service

I certify that a copy of the forgoing was filed electronically for all parties of record on this 27th day of April, 2022.

\_\_\_\_/s/_____
Kira Anne West, Esq.
Attorney for Mr. Matthew Wood