UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 21-CR-223-APM |
| : | |
| MATTHEW MARK WOOD, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's "Motion to Suppress Statements and Evidence." ECF No. 35. The defendant's motion to suppress should be denied without a hearing because the defendant has not alleged any factual allegations, which if established, would warrant suppression of the contested evidence.

**1) Any Pre-Arrest Statements Were Non-Custodial, Voluntary, and Miranda Was Not Required.**

Although the defendant does not expressly argue for the suppression of any pre-arrest statements, because the defendant states in the procedural background that "Mr. Wood moves to suppress *all* statements made by him to police officers," the Government feels compelled to address the admissibility of the defendant's pre-arrest statements. In this case, it is uncontested that the defendant called the FBI when he knew he had become a suspect and informed the FBI that he wanted to provide information about his participation in the events at the U.S. Capitol on January 6th. *See* Exhibit 1. Thereafter, the FBI went to the defendant's residence, where he provided a voluntary statement to the FBI. *See* Exhibit 2.

The defendant's motion does not expressly seek to suppress these statements. Moreover, the motion does not allege that these statements were coerced or that they were made while

1

defendant was in custody. To the contrary, the motion admits that the interview occurred in the defendant's house when he was not under arrest. *See* ECF No. 35 at 3-4.

As is well-established, *Miranda* warnings are only required "where a suspect *in custody* is subjected to interrogation." *United States v. Vinton*, 594 F.3d 14, 26 (D.C. Cir. 2010) (emphasis added). The protections offered by *Miranda* only apply in the instance of "custodial interrogation," which is when a reasonable person in the defendant's position would have understood that he was subject to a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). As the Supreme Court has explained, "[v]olunteered statements of any kind are not barred by the Fifth Amendment" and "any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence" without *Miranda* warnings. *Miranda*, 384 U.S. at 478; *see also United States v. Sheffield,* 799 F. Supp. 2d 22 (D.D.C. 2011), aff'd, 832 F.3d 296 (D.C. Cir. 2016); *United States v. Samuels,* 938 F.2d 210, 214 (D.C. Cir. 1991). The crux of the issue is thus whether, given the circumstances, "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). "Relevant factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal citations omitted).

As far as the location of questioning, interviews in a suspect's home are generally non-custodial. *Beckwith v. United States*, 425 U.S. 341 (1976); *see also* 2 WAYNE R. LAFAVE, CRIMINAL PROCEDURE § 6.6(e) (3d ed. 2007) ("courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral

2

surroundings"); *United States v. Faux*, 828 F.3d 130, 135-36 (2d Cir. 2016) ("[C]ourts rarely conclude, absent a formal arrest, that a suspect questioned in her own home is 'in custody.'"); *see also United States v. Mitchell*, 966 F.2d 92, 98–99 (2d Cir. 1992) (reversing district court where in–home interview was "cooperative" and there was no speech or action that could reasonably be taken as intimidating, coercive, or restricting defendant's freedom of action). In *Faux*, for instance, the Second Circuit found the circumstances to be noncustodial because the tone of the questioning was largely conversational; there was no indication that the agents raised their voices, showed firearms, or made threats; the individual's movements were monitored but not restricted, certainly not to the degree of a person under formal arrest; and she was thus never "completely at the mercy of" the agents in her home. 828 F.3d at 139; *see also United States v. Luck*, 2017 WL 1192899 (6th Cir. Mar. 31, 2017) (agents did not brandish weapons or block exits; the encounter was calm and relatively short); *United States v. Lamy*, 521 F.3d 1257 (10th Cir. 2008) (questioning in the "common area of his home, during which his mother came and went from the room" was not custodial).

Courts in this jurisdiction have similarly found, in situations where the interview takes place in a familiar or neutral setting, that defendants were not "in custody." *See, e.g., Vinton*, 594 F.3d at 27 ("Most of the statements Vinton claims were improperly admitted were made by him while he was sitting in his car…. At the time he made these statements, Vinton was not 'in custody' and faced an 'ordinary,' 'noncoercive' traffic stop."); *United States v. Robinson*, 256 F. Supp. 3d 15, 26 (D.D.C. 2017) (interview setting "was not a police statement or any other characteristically police-dominated or coercive location, but was instead an office inside of Defendant's own place of work").

3

In this case, the defendant does not allege that officers brandished their weapons, threatened him with arrest, handcuffed him, or engaged in any coercive actions to compel a confession. To the contrary, the defendant's motion admits that the FBI was responding to a voluntary call made by the defendant who provided information about his participation in the January 6th riots at the U.S. Capitol. Furthermore, as the ROI reflects, during the interview at his home, the defendant explained that he:

> is aware the FBI is looking for anyone who was inside the U.S. Capitol building and he contacted the FBI to "do the right thing" and explain his non-violent actions. He was remorseful and responsible for his actions and did not want to add to the FBI's investigative workload by waiting to be identified.

Under these circumstances (a non-custodial, self-initiated, voluntary, home interview, in which the defendant stated that he wanted to provide the FBI with information), Miranda is not required, and the defendant's statements are admissible.

**2) Statements Made on the Day of Defendant's Self-Surrender Were Non-Custodial, Not in Response to Questioning, and Were Made Voluntarily in the Presence of Counsel Prior to the Defendant's Formal Arrest While Walking to the Courthouse**

On March 4, 2021, the defendant was telephonically contacted by FBI Task Force Officer Robert Finch. Finch notified the defendant that a warrant for his arrest warrant had been issued by the United States District Court in Washington, D.C. The defendant agreed to self-surrender at the United States District Courthouse in Winston Salem, NC, on March 5, 2021, at 12:00 p.m. During the call, Wood *sua sponte* stated that "he was ready to take responsibility for his actions, do the right thing, and get this chapter of his life behind him." *See* Exhibit 3.

The next day, the defendant showed up to the courthouse with his previous attorney, David Freedman. Before even entering the courthouse, Freedman stated that Wood had additional information to provide the FBI. Then, with counsel present, the defendant provided additional details about his activities on January 6th. In addition, "while walking into the Courthouse for

4

processing by the United States Marshals Service, WOOD stated he was at peace with his decision to take responsibility for his actions and he believed his religious beliefs were helping to guide him through the process. He believes he is a better man now than he was in January and he wishes to do the right thing and move beyond this moment in time. Further, WOOD apologized for surprising [the FBI] with an attorney because he did not want it to seem like he was being unhelpful." *See* Exhibit 4.

Now, without providing any legal authority for his position, the defendant claims that "anything Mr. Wood said to the FBI before he entered the Winston Salem courthouse should be suppressed because he was told he was formally arrested yet never given a Miranda warning." Putting aside the fact that the defendant was not formally arrested until he was booked inside of the courthouse, even assuming *arguendo* that defendant was in custody while self-surrendering himself and walking into the courthouse with his attorney and an FBI agent, all of his statements are admissible because they were volunteered by the defendant and his attorney and were not made in response to questioning in a custodial setting. *See United States v. Williamson*, 181 F. Supp. 3d 41, 43 (D.D.C. 2014) ("volunteered and spontaneous statements made without Miranda warnings are admissible if they were not made in response to police questioning") (*citing United States v. Samuels*, 938 F.2d 210, 214 (D.C.Cir.1991) and *United States v. Tuten*, 293 F.Supp.2d 30, 33 (D.D.C.2003); *see also United States v. Foskey*, 636 F.2d 517, 521 (D.C. Cir. 1980) ("The defendant bears the burden of proving both custody and interrogation by a preponderance of the evidence."); *United States v. Samuels*, 938 F.2d 210, 214 (D.C. Cir. 1991) ("Contrary to [defendant's assertion, the record reveals that he volunteered the statement without prompting from the police. Such spontaneous statements are admissible without *Miranda* warnings.").

Here, defendant does not contend that he made any of these statements in response to questioning. To the contrary, his motion acknowledges that he made statements to the FBI before he entered the Winston Salem Courthouse (while conveniently ignoring the fact that the statements were spontaneously offered in the presence of the defendant's former attorney). ECF No. 35 at 9. Because the statements were non-custodial and were not made in response to questioning, the statements are admissible.

**3) The Consent to Search Defendant's Phone was Voluntary and Was Done in the Presence of Counsel**

After he was arrested, in the presence of counsel, the defendant was asked for his consent to search his phone. The defendant was presented with a consent to search form, in which his iPhone 12 Pro Max was described in detail. In the consent to search form, the defendant provided his password to log into the phone and expressly agreed to the following (Exhibit 5):

> I have been advised of my right to refuse to consent to this search, and I give permission for this search, freely and voluntarily, and not as the result of threats or promises of any kind.
>
> I authorize those Agents to take any evidence discovered during this search, together with the medium in/on which it is stored, and any associated data, hardware, software and computer peripherals.

The defendant now claims, again without citing any legal authority, that his consent was invalid because a warning was not given prior to the request. Again, even if true, the defendant's claim lacks any legal basis for suppression. As the law makes clear, the question is not about whether warnings were provided, but rather about the voluntariness of the consent. *See United States v. Roberson*, No. CR 21-102 (JDB), 2021 WL 5310685, at *15 (D.D.C. Nov. 15, 2021) ("The voluntariness of consent to search [cell phone] depends on 'the totality of all the surrounding circumstances,' *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S. Ct. 2041, 2048, 36 L. Ed. 2d 854 (1973), including 'the consenting party's age, poor education or low intelligence, lack of

advice concerning his constitutional rights, the length of any detention before consent was given, the repeated and prolonged nature of the questioning, and the use of physical punishment,'" *United States v. Wilson*, 605 F.3d 985, 1027 (D.C. Cir. 2010) (quoting *United States v. Hall*, 969 F.2d 1102, 1107 (D.C. Cir. 1992)). It is not necessary that a defendant be explicitly told that he has a right to refuse his consent, though that factor is relevant to the totality of the circumstances. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. 2041. The court's task is to 'assur[e] the absence of coercion.' *Id.* In general, consent is deemed voluntary 'where the [defendant] signed forms stating 'in clear and unambiguous language that [he] could deny the search at any time and affirm[ing] that [he was] not threatened, ordered or intimidated into submitting to the search.'" *Sherrod v. McHugh*, 334 F. Supp. 3d 219, 246 (D.D.C. 2018) (third alteration in original) (quoting *Fraternal Ord. of Police/Dep't of Corr. Lab. Comm. v. Washington*, 394 F. Supp. 2d 7, 14 (D.D.C. 2005)).").

In this case, the defendant signed the consent to search form after voluntary self-surrender, while he was not handcuffed, with a lawyer present, and with the explicit acknowledgement that he has been advised of his right to consent to the search and that he was giving his permission freely and voluntarily, and not as the result of threats or promises of any kind. Accordingly, there is no legal basis to suppress the extraction of the defendant's phone.

**4) Information About the Presence of Defendant's Cell Phone in and around the U.S. Capitol Was Lawfully Obtained via a Court Authorized Warrant**

As the defendant acknowledges, during its investigation, the FBI conducted a search of data from a Google geofence, AT&T tower dump, and Verizon tower dump, which resulted in information relating to the defendant's cell phone. ECF No. 35 at 10. Specifically, the FBI obtained information as a result of the Verizon tower dump, which listed the defendant's phone as

7

having been used in the area around the U.S. Capitol on January 6th. Although the defendant was not given this warrant in initial discovery, the warrant was provided in the Government's formal discovery production. Accordingly, the information was obtained with a court-authorized search warrant and there is no basis for suppression.

5) **No Evidentiary Hearing is Warranted.**

The defendant's requested evidentiary hearing is not warranted because for more than fifty years, the law in this Circuit has been that "[a] defendant is entitled to an evidentiary hearing on his motion to suppress 'only upon factual allegations which, if established, would warrant relief.'" *United States v. Thornton*, 454 F.2d 957, 967 n. 65 (D.C. Cir. 1971); *accord United States v. Law*, 528 F.3d 888, 903–04 (D.C. Cir. 2008). Here, the defendant has not alleged any factual allegations, which if established, would warrant suppression of the contested evidence.

## CONCLUSION

WHEREFORE, the United States respectfully requests that the defendant's Motion to Suppress be denied without a hearing.

                Respectfully submitted,

                MATTHEW M. GRAVES
                United States Attorney
                D.C. Bar No. 481052

By:    */s/ David Henek*
        DAVID T. HENEK
        N.Y. Bar No. 5109111
        SEAN MURPHY
        N.Y. Bar No. ####
        Assistant United States Attorneys
        601 D. Street, N.W.
        Washington, D.C. 20530
        (202) 252-7825
        David.T.Henek@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing pleading has been served upon counsel for the defendant via the electronic case filing system on this date.

>	*/s/ David T. Henek*
>	DAVID T. HENEK
>	Assistant United States Attorney