**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-CR-223 (APM)** |
| **v.** | : | |
| | : | |
| **MATTHEW MARK WOOD,** | : | |
| | : | |
| **Defendant.** | : | |

**NOTICE OF SUPPLEMENTAL AUTHORITY AND ARGUMENT**
**REGARDING THE ADMINISTRATION OF JUSTICE**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, respectfully submits this memorandum regarding the question of the

administration of justice in connection with the above-captioned matter. Defendant Matthew

Wood argued in his sentencing submission that the Certification of the Electoral College vote did

not constitute the "administration of justice" for purposes of U.S.S.G. § 2J1.2. For the reasons set

forth in Section V of the government's sentencing memorandum (ECF No. 55, pp. 48-57) and

further discussed here, this Court should apply both the three-point enhancement for substantially

interfering with the administration of justice, under U.S.S.G. § 2J1.2(b)(2), and the eight-point

enhancement for causing or threatening to cause injury or property damage in order to obstruct the

administration of justice, under U.S.S.G. § 2J1.2(b)(1)(B).

I.      **The Certification of the Electoral College Vote Involved the Administration of Justice**
         **as Defined Broadly in the Guidelines.**

Section 2J1.2, entitled "Obstruction of Justice," applies to a variety of obstruction offenses,

including all offenses under 18 U.S.C. § 1512 and under eleven other statutes found in 18 U.S.C.

Chapter 73. *See* U.S.S.G. § 2J1.2 cmt.; U.S.S.G. Appendix A. Section 2J1.2 provides for an eight-

level increase if the offense involved causing or threatening injury to a person or damage to

property "in order to obstruct the administration of justice." U.S.S.G. § 2J1.2(b)(1)(B). It also

provides for a three-level increase "if the offense resulted in substantial interference with the administration of justice." U.S.S.G. § 2J1.2(b)(2).

Section 2J1.2's text, purpose, and commentary all support the conclusion that conduct that obstructs Congress's certification of the Electoral College vote interferes with the "administration of justice" for purposes of the guideline. Administration of justice, in its broadest sense, refers to the proper administration of law by all three branches of government. Black's Law Dictionary defines "justice" to include "[t]he fair and proper administration of laws," and it defines "obstruction of justice" as "[i]nterference with the orderly administration of law and justice." Black's Law Dictionary (11th ed. 2019); *see* Ballentine's Law Dictionary 696 (3d ed. 1969) (defining justice to include "exact conformity to some obligatory law"). When defining "contempt" to include "[c]onduct that defies the authority or dignity of a court *or legislature*," Black's Law Dictionary observes that "such conduct interferes with the administration of justice." Black's Law Dictionary (11th ed. 2019) (emphasis added). And courts have defined "administration of justice" to mean "the performance of acts or duties required by law," *Rosner v. United States*, 10 F.2d 675, 676 (2d Cir. 1926) (quotation omitted), or "the performance of acts required by law in the discharge of duties," *United States v. Partin*, 552 F.2d 621, 641 (5th Cir. 1977).

To be sure, the term "administration of justice" is most commonly used in a narrower sense to refer to "interference with the pendency of some sort of judicial proceedings." *In re Kendall*, 712 F.3d 814, 828 (3d Cir. 2013); *see In re McConnell*, 370 U.S. 230, 234, 236 (1962) (defining the term in the contempt context as relating to "the performance of judicial duty"); *United States v. Aguilar*, 515 U.S. 593 (1995) (stating that the "omnibus clause" of 18 U.S.C. § 1503, which criminalizes obstruction of the "due administration of justice," requires proof of "an intent to

influence judicial or grand jury proceedings"). But there are compelling reasons for concluding that "administration of justice" bears its broader (albeit less common) meaning in U.S.S.G. § 2J1.2.

First, § 2J1.2's context and purpose support the broader reading of "administration of justice" in both (b)(2) and (b)(1)(B). Section 2J1.2 applies to an array of obstruction statutes, including a number that do *not* involve the "administration of justice" in the narrow sense (i.e., relating to judicial or quasi-judicial proceedings). *See* U.S.S.G. § 2J1.2 cmt. (listing covered statutes); U.S.S.G. Appendix A (statutory index). Those offenses include concealing or destroying invoices or papers relating to imported merchandise, 18 U.S.C. §§ 551; obstructing an investigation under the Workforce Innovation and Opportunity Act, 18 U.S.C. § 665(c); obstruction of proceedings before departments, agencies, and committees, 18 U.S.C. § 1505; obstruction of enforcement of state gambling laws, 18 U.S.C. § 1511; obstruction of official proceedings, 18 U.S.C. 1512; obstruction of a federal audit, 18 U.S.C. § 1516; destruction of documents in agency investigations, 18 U.S.C. § 1519; and interfering with the administration of the Internal Revenue Code, 26 U.S.C. § 7212. Yet under a narrow interpretation of the guideline, the enhancements under §§ 2J1.2(b)(1)(B) and (b)(2) would not apply to those statutes. That is good reason to reject such a reading. *Cf. United States v. Castleman*, 572 U.S. 572 U.S. 157, 167 (2014) (rejecting a reading of 18 U.S.C. § 922(g)(9) that "would have rendered [it] inoperative in many States at the time of its enactment").

Section 2J1.2's background indicates that the Sentencing Commission intended the enhancements to reach the type of violent and dangerous conduct at issue in this case. The background notes that § 2J1.2 broadly covers crimes "of varying seriousness," including offenses that involve intercepting grand jury deliberations, interfering with an illegal gambling investigation, or obstructing "a civil or administrative proceeding," and that the underlying

conduct may "range from a mere threat to an act of extreme violence." U.S.S.G. § 2J1.2 cmt. Background. Within that range, the enhancements "reflect the more serious forms of obstruction." *Id.* The Commission thus crafted the enhancements in § 2J1.2 to cover the most egregious *conduct* in the full knowledge that obstruction-of-justice offenses are not limited solely to interference with judicial proceedings.

Relatedly, limiting subsection (b)(1)(B)'s and (b)(2)'s enhancements to obstruction of judicial proceedings would undermine the purpose of the Guidelines. "A principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct." *Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018). The Guidelines therefore seek to achieve "a strong connection between the sentence imposed and the offender's real conduct." *United States v. Booker*, 543 U.S. 220, 246 (2005). The Sentencing Commission quite reasonably determined, for example, that "causing or threatening physical injury to a person, or property damage, in order to obstruct the administration of justice" is more serious than obstruction not involving such injury or threats and should be punished more severely. U.S.S.G. § 2J1.2(b)(1)(B). And the seriousness of the threatening or injurious conduct does not depend on whether the obstructed proceeding is judicial, legislative, or executive. There is no sound basis for assigning a significantly higher offense level to someone who violently interferes with a court proceeding than someone who violently interferes with a congressional proceeding. *See United States v. Rubenacker,* 21-cr-193 (BAH), Sentencing Hearing Tr. at 69 ("There is simply no indication in guideline Section 2J1.2 that the [specific offense characteristics] containing the phrase 'administration of justice' were meant to apply to only some of the statutes referenced to this guideline and not to apply to all of the cases involving obstruction of proceedings taking place outside of courts or grand juries; that simply doesn't make sense.")

This is especially true considering that subsections (b)(1)(B) and (b)(2) are not simply two factors among many but are the key sentencing factors in most obstruction cases. The three other enhancements in § 2J1.2 have limited application. Subsections (b)(1)(A) and (b)(1)(c) apply only to violations of § 1001 and § 1505 relating to sex or terrorism offenses. And subsection (b)(3), a comparatively minor two-level increase, applies only where a document was destroyed or altered or the offense was "extensive in scope, planning, or preparation." U.S.S.G. § 2J1.2(b)(3). Reading the enhancements in subsection (b)(1)(B) and (b)(2) as applying only to judicial or quasi-judicial proceedings would fail to distinguish between the seriousness of offenders' conduct in a wide variety of obstruction offenses covered by § 2J1.2. On the other hand, reading the term "administration of justice" more broadly eliminates this gap in the guideline.

Second, Section 2J1.2's commentary provides a broad definition of "administration of justice." It defines "[s]ubstantial interference with the administration of justice" to include "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based on perjury, false testimony, or other false evidence; or *the unnecessary expenditure of substantial governmental or court resources*." U.S.S.G. § 2J1.2 cmt. n.1 (emphasis added). This definition includes interference not only with "court" resources, but also with any "governmental" resources, a term that includes congressional resources. The Supreme Court has held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). Because this commentary is consistent with the plain text of the Guideline, which uses the broad term "administration of justice," it is authoritative.

To be sure, the commentary defines only the term "substantial interference with the administration of justice," which serves as the basis for the three-point enhancement in U.S.S.G. § 2J1.2(b)(2) and does not specifically define the term "in order to obstruct the administration of justice," which serves as the basis for the eight-point enhancement in U.S.S.G. § 2J1.2(b)(1)(B). But the relevant term "administration of justice" is identical and should be given the same interpretation in both enhancements. The operative verbs "interfere[]" and "obstruct" carry the same meaning in this context. And the adjective "substantial" in § 2J1.2(b) does not change the meaning of "administration of justice," especially since the commentary repeats the word, requiring "the unnecessary expenditure of *substantial* governmental . . . resources." U.S.S.G. § 2J1.2 cmt. n.1 (emphasis added). Thus, the term "in order to obstruct the administration of justice" in U.S.S.G. § 2J1.2(b)(1)(B) should be read to include obstructive conduct aimed at nonjudicial governmental activities. A different conclusion would lead to the incongruous result of giving two different meanings to the term "administration of justice" within the same guideline. *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007) ("A standard principle of statutory construction provides that identical words and phrases within the same statute should normally be given the same meaning.").

Obstruction of the Electoral College certification vote on January 6, 2021 falls comfortably within the meaning of "administration of justice" as used in § 2J1.2 because it involved Congress's performance of duties required by law. Specifically, Congress's certification of the Electoral College vote was an official proceeding required by both the Constitution and federal statutes. [1]

---

[1] Chief Judge Howell has articulated a different basis on which to apply the enhancement to obstruction of the Electoral College certification. *United States v. Rubenacker,* 21-cr-193 (BAH), Sentencing Hearing Tr. at 69. She pointed out that Black's Law Dictionary defines "administration of justice" to include the "maintenance of right within a political community by means of the physical force of the state," Black's Law Dictionary (11th ed. 2019), and observed

*See* U.S. Const. art. II, § 1, cl. 3; 3 U.S.C. §§ 15-18. Application of both subsections (b)(1)(B) and (b)(2) is therefore appropriate here.

## II.    Courts, Including Judges on This Court in January 6 Cases, Have Correctly Held That Non-Judicial Proceedings Can Involve the Administration of Justice.

Other courts have appropriately applied the "administration of justice" enhancements in U.S.S.G. § 2J1.2(b)(2) to efforts to obstruct a wide range of proceedings that were not limited to judicial or grand jury proceedings. *See United States v. Ali*, 864 F.3d 573, 574 (7th Cir. 2017) (upholding the application of § 2J1.2(b)(2) after law enforcement officials expended substantial resources to recover the defendant's children he kidnapped and transported internationally); *United States v. Atlantic States Cast Iron Pipe Co.*, 627 F. Supp. 2d 180, 205-08 (D.N.J. 2009) (applying § 2J1.2(b)(2) after a defendant interfered with OSHA investigations into a workplace accident); *United States v. Weissman*, 22 F. Supp. 2d 187, 194-98 (S.D.N.Y. 1998) (applying § 2J1.2(b)(2) after a defendant withheld subpoenaed documents from a congressional subcommittee).

Several judges on this Court have applied § 2J1.2's "administration of justice" enhancements in cases arising from the Capitol breach on January 6, both in cases where the parties agreed to their application and where the application was contested. *See, e.g.*, *United States v. Wilson*, No. 21-cr-345 (Lamberth, J.); *United States v. Hodgkins*, No. 21-cr-188 (Moss, J.); *United States v. Fairlamb*, No. 21-cr-120 (Lamberth, J.); *United States v. Chansley*, No. 21-cr-003, (Lamberth, J.); *United States v. Matthew Miller*, No. 21-cr-075 (Moss, J.) (uncontested, but independently addressed by the Court); *United States v. Rubenacker*, No. 21-cr-193 (BAH)

---

that the joint session of Congress used "'the physical force of the state' in the form of law enforcement officers located in and around the Capitol to secure the proceedings." *Rubenacker,* Sentencing Tr. at 75. This understanding of the guideline is arguably broader than the interpretation advanced by the government because it could apply to any proceeding (or event) at which there was a police presence, rather than being limited to proceedings involving the administration of the law.

(contested); *United States v. Guy Reffitt*, No. 21-cr-032 (Friedrich, J.) (contested); *United States v. Pruitt,* No. 21-cr-23 (Kelly, J.); *United States v. Robertson,* 21-cr-34 (Cooper, J.) (contested).

## III.    Judge McFadden's Contrary Conclusion in *Seefried* and *Secor* is Unpersuasive.

One judge on this Court, Judge McFadden, has reached a contrary conclusion, concluding that "administration of justice" in § 2J1.2 is limited to "a judicial or related proceeding that determines rights or obligations." *United States v. Seefried*, No. 21-cr-287, Doc. 123, at 1 (D.D.C. Oct. 29, 2022) (TNM); *see United States v. Rodean*, No. 21-cr-57, Doc. 76 (D.D.C. Oct. 26, 2022) (restricted statement of reasons); *United States v. Secor,* No. 21-cr-157, Doc. 56 at 17-20 (Oct. 24, 2022) (TNM); *United States v. Hale-Cusanelli*, No. 21-cr-37, Doc. 120 at 50-55 (D.D.C. Sep. 27, 2022). Judge McFadden's reasons for reaching that conclusion, however, are not persuasive.

Judge McFadden first discussed Black's Law Dictionary's definitions of "administration of justice" and "due administration of justice," which, he concluded, "suggest that the 'administration of justice' involves a judicial or quasi-judicial tribunal that applies the force of the state to determine legal rights." *United States v. Seefried*, No. 21-cr-287 (TNM), 2022 U.S. Dist. LEXIS 196980, at *5-6 (D.D.C. Oct. 29, 2022). He also considered that dictionary's definition of "obstructing" and "interfering with" the administration of justice, a definition that he determined "further corroborates that the 'administration of justice' involves something like a legal proceeding, such as a trial or grand jury hearing." *Id.* at 8. But Judge McFadden did not consider the broader definitions of "justice" and "obstruction of justice" cited above, which relate to the orderly administration of the law more generally. Indeed, Black's Law Dictionary recognizes that "[c]onduct that defies the authority or dignity of a court *or legislature* . . . . interferes with the administration of justice." Black's Law Dictionary (11th ed. 2019) (emphasis added).

Nor does Judge McFadden's corpus linguistics analysis support a different result. Surveying a representative sampling of 375 uses of the term "administration of justice" in legal

usage between 1977 and 1987, Judge McFadden found that about 65% of the hits referred to "a judicial proceeding deciding legal rights," about 4% involved "law enforcement activities," and only three entries "referr[ed] to government function generally." *Seefried*, 2022 U.S. Dist. LEXIS 196980, at *16-20. But the simple fact that the term *usually* bears judicial connotations does not mean that it *must*, particularly where, as here, the guideline's context, purpose, and commentary point in a different direction. Like all words, legal terms often bear multiple meanings. For example, the term "suppression of evidence" can refer either to a court's exclusion of evidence from trial or to the prosecution's withholding of favorable evidence from the defense. Which meaning the term bears in a particular instance cannot be determined by the frequency of each meaning within the legal corpus. And in this case, the frequent use of other meanings is no reason to reject a broader meaning of "administration of justice" that gives full effect to the guideline and corresponds with the commentary's definition.

Judge McFadden was also incorrect in his analysis of § 2J1.2's commentary. *Id*. at 21-27. As an initial matter, he questioned whether the commentary was even "authoritative," pointing out that the D.C. Circuit "has suggested that courts should eschew deference to the Commission when the commentary expands the meaning of the text of the Guidelines themselves." *Id.* at 14 (citing *United States v. Winstead*, 890 F.3d 1082, 1092 (D.C. Cir. 2018)). But *Winstead* involved a very different situation, in which the guideline's text included a specific list of crimes defined as "controlled substance offenses" and the commentary added an additional *attempt* crime that was "not included in the guideline." *Winstead*, 890 F.3d at 403. The D.C. Circuit held that "[b]y purporting to add attempted offenses to the clear textual definition," rather than "interpret[ing] or explain[ing] the ones already there," the commentary conflicted with the guideline and was not authoritative under *Stinson*. *Id.* at 404. Here, by contrast, the commentary does not attempt to add

to a finite list of offenses, but rather "explain[s]" that the term "administration of justice" bears a broad meaning that includes non-judicial proceedings.

Nor was Judge McFadden correct that—even if it is binding—§ 2J1.2's commentary supports only "a narrower interpretation of the 'administration of justice.'" *Seefried*, 2022 U.S. Dist. LEXIS 196980, at *23. Although the other definitions in the commentary undoubtedly relate to "investigations, verdicts, and judicial determinations," that fact does not support a definition that excludes congressional proceedings. The commentary's use of the word "includes" indicates that the definition is not an exhaustive list. *See* Antonin Scalia & Bryan A Garner, *Reading Law: The Interpretation of Legal Texts* 132 (2012). And the inclusion of the "premature or improper termination of a felony investigation" indicates that the definition applies to executive-branch investigations that are not yet before a grand jury or court.

Reading the commentary's use of the word "governmental . . . resources" to include congressional resources would not, as Judge McFadden concluded, "render[ ] the phrase 'or court' superfluous." *Seefried*, 2022 U.S. Dist. LEXIS 196980, at *25. Although a "broad definition" of "governmental" could "include court resources," *id.*, using both terms in an attempt to sweep in all three branches of government is hardly an obvious superfluity. The Sentencing Commission could have added the word "court" to clarify that the term "governmental" did not exclude courts. And the purported superfluity could be avoided by reading "governmental . . . resources" to refer to the resources of both the executive and legislative branches (as opposed to the judicial). The superfluity canon provides no basis to limit the term to "*prosecutorial* resources." *Id.* Moreover, Judge McFadden's interpretation of the commentary runs into its own superfluity problem. If, as he concluded, the term "administration of justice" in § 2J1.2 refers only to "a judicial or related

proceeding," *id.* at 2, then the word "governmental" is itself superfluous. This reading should be rejected.

Judge McFadden's concern that a broader reading of "administration of justice" would allow the government to "trigger the enhancements at will" is also misplaced. *Id.* at 24. The enhancements in § 2J1.2 do not apply whenever the offense "caused unnecessary expenditures of its resources" in some attenuated way, such as by causing the government to later bring a prosecution. *Id.* ("While the events of January 6 caused the Government to commit significant resources—evidenced in part by the number of cases charged in this district—this argument proves too much."). Instead, the enhancement is best read as applying where the obstructive conduct itself—not the later prosecution of that conduct—caused the unnecessary expenditure of substantial governmental or court resources. *See United States v. Harrington*, 82 F.3d 83, 87 n.2 (5th Cir. 1996) (observing that the case resulted in the expenditure of "substantial resources . . . over and above the routine costs of prosecuting the obstruction offense"). If the enhancement could truly be triggered simply by "charg[ing]" a case, *Seefried*, 2022 U.S. Dist. LEXIS 196980, at *24, then even under Judge McFadden's reading the enhancement would apply every time the government brought a felony prosecution, which results in the expenditure of substantial "court" and "prosecutorial" resources, *id.* at 24-25. Judge McFadden's conclusion that "governmental" should be read to exclude Congress simply does not follow from his concerns about excessive application of the enhancements.

Judge McFadden was also incorrect in perceiving a conflict between the government's interpretation of "administration of justice" in § 2J1.2 and the same term in 18 U.S.C. § 1503, which contains a catchall provision prohibiting obstruction of "the due administration of justice." *See Seefried*, 2022 U.S. Dist. LEXIS 196980, at *8-9 (observing that the government had not

charged any January 6 defendants under § 1503), 31 (saying it would be "incongruous" to conclude that "official proceeding" means something different in the Sentencing Guidelines than in the statutory context). The Supreme Court has made clear that a term can have a different meaning in the Sentencing Guidelines than it does in a statute. *DePierre v. United States*, 564 U.S. 70, 87 (2011). And there are at least three differences between § 1503 and § 2J1.2 that counsel in favor of reading them differently. First, unlike § 1503, § 2J1.2 includes its own definition of the "administration of justice," which covers the expenditure of "governmental *or* court" resources. Second, § 1503 appears in the context of a statute that applies to jurors, court officers, and judges, which may favor a narrower reading of the catchall provision for interference with the "due administration of justice." And, third, § 2J1.2's entire purpose is to distinguish between levels of culpability for those who violate a wide variety of obstruction statutes, many of which are not limited to judicial or quasi-judicial proceedings.

Judge McFadden's reading of § 2J1.2 also creates difficult line-drawing problems. Under his reasoning, the enhancements in subsection (b)(1)(B) and (b)(2) apply only to offenses where the obstructed proceedings were "judicial" or "quasi-judicial" in nature. *Seefried*, 2022 U.S. Dist. LEXIS 196980, at *5-6. But those terms themselves raise difficult questions about how closely the obstructive conduct must "relate[]" to a judicial proceeding or what proceedings can be said to "determine[] rights or obligations." *Id.* at 1-2. For example, 18 U.S.C. § 1505 applies to obstruction of an investigation by the House Ethics Committee, which has the power to discipline current members of Congress. That inquiry would seem to be "quasi-judicial" and one that "determines rights or obligations," *id.* at 1-2, 6, yet it does not involve the "possibility of punishment by the state," *id.* at 6. The government's broader reading of "administration of justice," by contrast, would apply to all the obstruction offenses covered by § 2J1.2. Under the government's reading,

therefore, a sentencing court need not answer difficult questions about whether a proceeding is sufficiently "judicial" or "quasi-judicial" to trigger subsections (b)(1)(B) and (b)(2).

Moreover, even under a narrower reading of administration of justice, the certification fits within the definition because it has quasi-judicial features. The Vice President, as the President of the Senate, serves as the "presiding officer" over a proceeding that counts votes cast by Electors throughout the country in presidential election. 3 U.S.C. § 15. As in a courtroom, Members may object, which in turn causes the Senate and House of Representatives to "withdraw" to their respective chambers so each House can render "its decision" on the objection. *Id.* Congress's certification of the Electoral College vote, moreover, must terminate with a decision: Congress may not recess until "the count of electoral votes" is "completed," and the "result declared." 3 U.S.C. § 16. Indeed, for these reasons, several judges on this Court have concluded that Congress's certification of the Electoral College is a "quasi-adjudicative or quasi-judicial" proceeding. *United States v. Nordean*, 579 F. Supp. 3d 28, 43 (D.D.C. 2021); *see United States v. Robertson*, 588 F. Supp. 3d 114, 121-22 (D.D.C. 2022) (holding that "the certification of the Electoral College vote is quasi-adjudicatory"); *United States v. Caldwell*, 581 F. Supp. 3d 1, 14-15 (D.D.C. 2021) (holding that the certification was "an 'adjudicatory' proceeding").

## IV.    CONCLUSION

For the reasons set forth above, the government recommends that the Court apply both the three-point enhancement for substantially interfering with the administration of justice, under U.S.S.G. § 2J1.2(b)(2) and the eight-point enhancement for causing or threatening to cause injury or property damage in order to obstruct the administration of justice, under U.S.S.G. § 2J1.2(b)(1)(B). Wood's conduct obstructed the "administration of justice," as that term is used in the Guidelines, because it obstructed the certification of the Electoral College vote.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:

Sean P. Murphy
DC Bar No. 1187821
Assistant United States Attorney
Detailee to the District of Columbia
U.S. Attorney's Office—Dist. of Puerto Rico
Torre Chardon, Suite 1201
350 Carlos Chardon Ave.
San Juan, PR 00918
787-566-7878
sean.murphy@usdoj.gov

/s/

David T. Henek
Assistant United States Attorney
NY Bar No. 5109111
601 D Street, N.W.,
Washington, D.C. 20530
202-252-7566
david.t.henek@usdoj.gov